UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURIE WALKER,

           Plaintiff,        Civil Action No. 13-14599
                                        Honorable George Caram Steeh
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12, 13]

Plaintiff Laurie Walker ("Walker") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [12, 13], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

### I.  RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Walker is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [13] be DENIED, Walker's Motion for Summary Judgment [12] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Recommendation.

**II.     REPORT**

    **A.     Procedural History**

On May 23, 2012, and June 4, 2012, Walker filed applications for DIB and SSI, respectively, alleging a disability onset date of April 21, 2012. (Tr. 118-24, 130-35). These applications were denied initially on August 21, 2012. (Tr. 66-73). Walker filed a timely request for an administrative hearing, which was held on February 12, 2013, before ALJ Timothy Scallen. (Tr. 33-52). Walker, who was represented by attorney Cassandra Frum, testified at the hearing, as did vocational expert Kimberly Warner. (*Id.*). On May 22, 2013, the ALJ issued a written decision finding that Walker is not disabled. (Tr. 20-28). On September 6, 2013, the Appeals Council denied review. (Tr. 1-5). Walker filed for judicial review of the final decision on November 5, 2013. (Doc. #1).

    **B.     Background**

        *1.     Walker's Disability Reports and Testimony*

At the time of the administrative hearing, Walker was 51 years old. (Tr. 37). She testified that she graduated from high school but had no further education. (*Id.*). She lived alone in a condominium. (Tr. 42). According to Walker, her back was badly injured in 2004 when she was pushed down a set of stairs by her boyfriend; she underwent fusion surgery at that time, and titanium rods and cages were put in place. (Tr. 49, 166, 174). Afterwards, however, Walker recovered fairly well and was able to work as a waitress until April 2012, when her low back pain became "way worse." (Tr. 38-39, 171). Walker testified that her back pain is a 10/10 on the pain scale "90 percent of the time," and it radiates down her right leg. (Tr. 40). She also gets what she calls "shockers," which are sudden jolts of pain down her back and her right side, two or three times a day. (Tr. 40-41). In addition, she has severe arthritis in her right hip; she testified that walking is difficult and she is "losing the use of [her] right leg now." (Tr. 38, 48).

2

However, she does not take any pain medication other than ibuprofen because Vicodin upsets her stomach. (Tr. 40).

Walker indicated that she cannot kneel or lift anything heavier than a gallon of milk. (Tr. 38, 42). She can sit for ten minutes, stand for "only a couple minutes," and walk less than a city block. (Tr. 42-43). Walker testified that, approximately three times a week, she cannot walk at all for some period of time and can only "crawl through the house." (Tr. 46-47). She also asserted that she "can't put any weight" on her right leg; she has to "drag it" or "pick it up to move it." (Tr. 38). She wears a back brace for support and sometimes uses a walker at home. (Tr. 39). She cannot climb stairs and has difficulty sleeping because of pain. (Tr. 43, 49).

2. *Medical Evidence*

On June 5, 2012, Walker presented to the emergency department at Mount Clemens Regional Medical Center, complaining of increasing back pain. (Tr. 229-31). On examination, she was in no apparent distress, had no point tenderness anywhere over her spine, and had full ranges of motion, but she had mildly decreased strength in the right lower extremity. (Tr. 230). A lumbar spine x-ray performed that day revealed only stable postoperative changes. (Tr. 231). Walker was advised to follow up with her neurosurgeon, Dr. Mark Goldberger. (Tr. 230).

On June 13, 2012, Walker again presented to the emergency department, this time "fully intoxicated" and complaining of right rib pain. (Tr. 222-23). Walker indicated that she had been drinking two days earlier and was unsure how she was injured. (Tr. 222). Attending physician Michael Kitto, D.O., noted that Walker was not taking any medications, although she indicated that her doctor previously had prescribed Vicodin, Naprosyn, and Valium for her back pain. (*Id.*). X-rays revealed no sign of an acute fracture, but Dr. Kitto's examination found a possible hairline rib fracture. (Tr. 223). Walker was discharged with pain medication. (*Id.*).

3

On June 20, 2012, Walker saw Mark Goldberger, D.O., a neurosurgeon. (Tr. 227-28). He noted that that Walker underwent back surgery with fusion (in 2004), did well postoperatively, and was able to return to work as a waitress. (Tr. 227). Walker reported experiencing progressively worsening back and leg pain over the past couple of years. (*Id.*). Dr. Goldberger reviewed x-rays from McLaren Macomb Hospital and noted that the fusion appeared to be well-healed. (Tr. 228). On examination, Walker had 5/5 strength throughout, except for a "giveaway-type" weakness in her right lower extremity. (*Id.*). Dr. Goldberger's impressions were lumbago, radiculitis, and degenerative disc disease, but he recommended that Walker have an MRI.[1] (*Id.*).

On November 7, 2012, Walker presented to Norman Rotter, M.D., a neurosurgeon. (Tr. 233-34). On examination, Dr. Rotter described Walker as alert, pleasant, cooperative, teary-eyed, and somewhat depressed. (Tr. 233). The motor exam showed that Walker's motor bulk, strength, and coordination were good. (*Id.*). She had a mild limp on her right side but performed heel and toe walking well. (*Id.*). Straight leg raising tests were negative on the left, but positive for pain at 30 degrees on the right. (*Id.*). Dr. Rotter noted that flexion, abduction, and external rotation of the left hip were normal, but the right was "markedly abnormal causing severe pain." (*Id.*). Dr. Rotter noted that the etiology of Walker's symptoms was not clear, although he thought that her right hip joint was her most serious problem. (*Id.*). Dr. Rotter also suggested that there was some element of posterior musculoskeletal pain and degenerative disc disease, which – combined with her hip pain – made her "totally and permanently disabled from any gainful employment." (*Id.*). Dr. Rotter ordered an x-ray of Walker's right hip and indicated that once she obtained health insurance, additional studies should be performed. (Tr. 233-34). X-

---

[1] The administrative record before the ALJ did not contain any MRI results.

4

rays of Walker's hips performed on January 14, 2013, revealed "very severe degenerative osteoarthritic disease of the right hip with marked narrowing of the right hip joint space," along with less severe degenerative disease of the left hip. (Tr. 236).

On February 5, 2013, Walker saw Muwaffak Abdulhak, M.D., for a neurosurgical opinion. (Tr. 245-46). Although Walker had some noted weakness in the right lower extremity on motor examination, she had normal sensory and reflex functioning. (Tr. 245). Dr. Abdulhak expressed more concern about "hardware failure versus adjacent level disease." (Tr. 246). He ordered a lumbar spine x-ray, an EMG study of Walker's lower extremities, and a CT myelogram of her lumbar spine. (*Id.*). The February 15, 2013, lumbar spine x-rays revealed mild anterior wedging of the L1 vertebral body, but, otherwise, the vertebral body heights and alignment and disc interspaces were well-maintained. (Tr. 251). The EMG, performed on February 26, 2013, produced electrodiagnostic evidence of a mild chronic right L4 radiculopathy without denervation. (Tr. 249).

### 3. *Vocational Expert's Testimony*

Kimberly Warner testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 50-51). The VE characterized Walker's past relevant work as a waitress as semi-skilled in nature and performed at the light exertional level. (Tr. 50). Then, the ALJ asked the VE to imagine a claimant of Walker's age, education, and work experience, who could perform light work, with the following additional limitations: occasional climbing of stairs and ramps; no climbing of ropes, ladders, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; frequent reaching bilaterally; no concentrated exposure to unprotected heights, vibrating tools, or moving machines; and only simple, routine, and repetitive tasks. (Tr. 50-51). The VE testified that the hypothetical individual would not be capable of performing

Walker's past relevant work. (Tr. 51). However, the VE testified that the hypothetical individual would be capable of working in the jobs of information clerk (4,500 jobs in the state of Michigan), sorter (11,000 jobs), and usher (3,100 jobs). (*Id.*).

### C. Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing

20 C.F.R. §§404.1520, 416.920). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Walker is not disabled under the Act. At Step One, the ALJ found that Walker has not engaged in substantial gainful activity since April 21, 2012, the alleged onset date. (Tr. 22). At Step Two, the ALJ found that Walker has the severe impairments of lumbago status-post a 2004 surgery with hardware placement, mild right radiculopathy without denervation, and osteoarthritis (bilateral hips). (Tr. 22-23). At Step Three, the ALJ found that Walker's impairments do not meet or medically equal a listed impairment. (Tr. 23).

The ALJ then assessed Walker's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: only occasional climbing of stairs and ramps; no climbing of ropes, ladders, or scaffolds; only occasional balancing, stooping, kneeling, crouching, and crawling; no more than frequent reaching bilaterally; no concentrated exposure to unprotected heights, vibrating tools, or moving machines; and only simple, routine, and repetitive tasks due to the combined symptoms of pain and anxiety. (Tr. 23-26).

At Step Four, the ALJ determined that Walker is not capable of performing her past relevant work as a waitress. (Tr. 26). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Walker is capable of performing a significant number of jobs that exist in the national economy. (Tr. 26-27). As a result, the ALJ concluded that Walker is not disabled

under the Act. (Tr. 27).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals

Council," or in this case, the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2011); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.   Analysis**

The ALJ considered Walker's back and hip impairments and concluded that, despite these conditions, Walker can perform a limited range of light work. (Tr. 23-26). In reaching this conclusion, the ALJ characterized the objective medical evidence as "almost entirely unremarkable" and opined that "save for the claimant's subjective allegations, there is little in the way of support for a finding of 'disabling' impairments." (Tr. 24). After reviewing the evidence of record, however, the Court disagrees. Indeed, there are two critical pieces of medical evidence in this case – Dr. Rotter's November 7, 2012 report and Walker's January 14, 2013 hip x-rays – the first of which the ALJ mischaracterized, and the second of which the ALJ seems to have ignored. For the reasons set forth below, these errors require remand.

Beginning with the first piece of evidence, the ALJ discussed Dr. Rotter's report in his decision, stating:

> Interestingly, the next relevant note of record, dated November 7, 2012, reveals an almost entirely normal physical examination, save for some noted markedly abnormal external rotation of the right hip. The claimant

9

> had good cognition; normal cranial nerves; normal motor exam with good strength and coordination; normal sensory exam; heel and toe walk were done well; and while the doctor noted "markedly abnormal" right hip rotation, he further noted the claimant simply had a "mild" right-sided limp. Amazingly, this doctor, upon such almost entirely benign exam, opines that [t]he claimant is "totally and permanently disabled from any gainful employment." The undersigned accords such blanket, inconsistent, and unsupportable conclusion/opinion no weight. There is no indication of any treating relationship with this source and the conclusion/opinion has no support whatsoever from the evidence of record, save for the claimant's subjective complaints.

(Tr. 25 (internal citations omitted)).

Although the ALJ is correct that there is no indication that Dr. Rotter is one of Walker's treating physicians,[2] the ALJ must fairly consider and weigh his opinions. *See* 20 C.F.R. §404.1527(c) (ALJ must evaluate every medical opinion that is received, considering factors such as the opinion's evidentiary support and its consistency with the record as a whole). In this case, though, the ALJ mischaracterized Dr. Rotter's opinion, which seems to have impacted the remainder of his decision. For example, the ALJ's statement that Dr. Rotter's report "reveals an almost entirely normal physical examination, save for some noted markedly abnormal external rotation of the right hip" improperly trivializes the latter portion's significance which refers to Dr. Rotter's finding that external rotation of Walker's right hip was "markedly abnormal **causing severe pain**." (Tr. 25 (citing Tr. 233) (emphasis added)). Moreover, the ALJ's conclusion that it is "amazing" that Dr. Rotter opined that Walker is disabled "upon such almost entirely benign exam" is similarly puzzling, when the doctor's conclusion could easily be reconciled with his finding and other evidence discussed below. Again, Dr. Rotter's examination was not "almost entirely benign"; rather, although there were some benign findings (good cognition, intact cranial

---

[2] Walker's assertion that Dr. Rotter is a treating physician is belied by both the introductory and closing paragraphs of Dr. Rotter's report, in which he twice thanked Dr. Iyer "for allowing [him] to *consult* on your patient." (Tr. 233-34 (emphasis added)). In other words, Dr. Rotter saw Walker once, at the request of Dr. Iyer, and there is no indication of any follow-up visits.

nerves, and good motor bulk, strength, and coordination, for example), Dr. Rotter specifically found that Walker has markedly abnormal rotation of her right hip, a mild limp, and a positive straight leg raising test on the right. (Tr. 233). He further opined that her right hip joint is a "major problem" that caused Walker to suffer "severe pain" – a conclusion borne out by his examination findings, as well as the x-rays he ordered (which the Court discusses below) – and that that impairment, either alone or together with her back impairment, caused him to believe she is disabled. (*Id.*). Thus, although an ALJ is not required to give any special weight to a treating source's (let alone non-treating source's) conclusion that a claimant is disabled, as such determination is reserved to the Commissioner alone, 20 C.F. R. § 404.1527(e)(1), (e)(3), here, the ALJ's failure to properly evaluate Dr. Rotter's medical findings, and therefore failure to properly incorporate those findings into his overall analysis of Walker's disability status, results in a decision that is not supported by substantial record evidence.

The same is true with respect to the second piece of critical medical evidence – Walker's January 14, 2013 hip x-rays, which revealed "very severe degenerative osteoarthritic disease of the right hip with marked narrowing of the right hip joint space," along with less severe degenerative disease of the left hip. (Tr. 236). There is no mention of these x-ray results whatsoever in the ALJ's decision.[3] It is true that the ALJ need not discuss each and every piece of evidence in his decision. *See Kornecky*, 167 F. App'x at 508. However, the ALJ's failure to discuss and evaluate this particularly important evidence is a serious error for three reasons.

First, the x-rays, although occurring after Dr. Rotter's findings discussed above, are consistent with those findings. Given the importance of the issue to Walker's claim, the two pieces of evidence should have been discussed together to ensure a fair analysis.

---

[3] The ALJ did note that Walker has "some right hip arthritis" (Tr. 25), but this passing statement simply minimized some of the most salient objective medical evidence.

Second, this is not a case where the ALJ merely failed to reference a piece of evidence that was cumulative of other evidence already discussed, or glossed over or minimized the import of the evidence; rather, the ALJ here ignored the important x-rays and then affirmatively discounted the credibility of Walker's allegations on the grounds that "objective test results show almost entirely normal functioning." (Tr. 25). This was simply inaccurate and, as a result, the ALJ's credibility finding is not supported by substantial evidence.[4] *See, e.g., Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 865 (6th Cir. 2011) ("In sum, while credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence."); *Johnson v. Comm'r of Soc. Sec.*, 2013 WL 4669997, at *11 (E.D. Mich. Aug. 30, 2013) (remanding where the ALJ's credibility determination was not supported by substantial evidence).

Finally, the January 2013 x-ray results are significant because they reveal evidence of joint space narrowing, which is relevant at Step Three (in determining whether Walker meets or medically equals Listing 1.02). The ALJ's error in failing to properly discuss this medical evidence was significant, as a conclusion that Walker meets or medically equals a Listing would

---

[4] The ALJ's credibility analysis falls short in other respects, as well. Social Security Ruling ("SSR") 96-7p provides that, in addition to the objective medical evidence, additional factors should be considered in evaluating the credibility of an individual's complaints of pain, including: prior work record; daily activities; the location, duration, frequency, and intensity of pain or other symptoms; and the type, dosage, effectiveness, and side effects of medication. *See Soc. Sec. Rul. 96-7p*, 1996 WL 374186, at *1-3 (July 2, 1996). The ALJ did not discuss most of these factors, and the ones he did discuss he resolved against Walker without sufficiently analyzing competing viewpoints. For example, the ALJ cited Walker's testimony that she worked for nine years after undergoing back surgery in 2004 as evidence that she was lying about the severity of her pain (Tr. 24), when such a fact could just as easily support an inference that because she had a solid work history, she was not a malingerer. Moreover, the ALJ discounted Walker's credibility because when she presented to the emergency room in June 2012, she was not taking any medication for her back pain (*id.*), despite the fact that she testified that the pain medication she had been prescribed upset her stomach. On remand, the ALJ should fully evaluate Walker's credibility.

12

have resulted in a presumptive finding of disability. *See Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012).

When considering presumptive disability at Step Three, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Id.* (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)). In this case, at Step Three, the ALJ evaluated Walker's impairments in the context of Listing 1.02, which requires evidence of the following, in relevant part:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints. With … [i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively as defined in [Listing] 1.00B2b….

20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.02. Without any further explanation, the ALJ concluded that Walker does not meet or medically equal the requirements of this Listing because she does not have "medical evidence of involvement of one peripheral weight-bearing joint resulting in the inability to ambulate effectively …." (Tr. 23).

Walker argues that the ALJ conducted "no analysis whatsoever" in reaching this conclusion. (Doc. #12 at 16). It is clear that the January 2013 x-ray – which, again, the ALJ did not mention in his decision – reveals "very severe degenerative osteoarthritic disease of the right hip with marked narrowing of the right hip joint space." (Tr. 236). This certainly appears to provide the evidence of "joint space narrowing" required by Listing 1.02.[5] The Listing also

---

[5] The Commissioner argues in her motion that this evidence of joint space narrowing is insufficient to meet the Listing because "the x-ray produced no evidence of bony destruction, one of the requirements set out in the listing." (Doc. #13 at 20 (internal citation omitted)).

13

requires signs of limitation of motion or other abnormal motion of the affected joint, as well as an inability to ambulate effectively. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.02. Here, Dr. Rotter found "markedly abnormal" rotation of the right hip and that Walker walked with a limp. (Tr. 233). Moreover, Walker testified that walking is difficult, that she is losing the use of her right leg, and that several days a week she cannot walk at all for some period of time and must "crawl through the house." (Tr. 38, 46-48).

In light of all of the foregoing, the Court finds that the ALJ's failure to discuss the appropriate medical evidence was not mere "harmless error," and that his decision that Walker does not meet or medically equal the requirements of Listing 1.02 is not supported by substantial evidence. Because a possibility exists that Listing 1.02 is met, remand is appropriate. *See Reynolds*, 424 F. App'x at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing.").

For all of the above reasons, the ALJ's conclusion that Walker is not disabled is not supported by substantial evidence, and remand is warranted.

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [13] be DENIED, Walker's Motion for Summary Judgment [12] be GRANTED IN PART, the ALJ's decision be REVERSED, and this case be REMANDED for further proceedings consistent with this Recommendation.

---

However Listing 1.02 requires only evidence "of joint space narrowing, bony destruction, or ankylosis of the affected joints." 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.02 (emphasis added). Thus, here, where there appears to be evidence of joint space narrowing, the fact that there may not also be evidence of "bony destruction" is not determinative.

Dated: December 29, 2014                s/David R. Grand
Ann Arbor, Michigan                     DAVID R. GRAND
                                        United States Magistrate Judge

## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 29, 2014.

                                        s/Eddrey O. Butts
                                        EDDREY O. BUTTS
                                        Case Manager